UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LAMONT ADAMS,

                         Plaintiff,

v.                                                                   9:21-CV-0033
                                                                     (GLS/ML)
TERRENCE X. TRACY, Chief Counsel
of Division of Parole,

                         Defendant.
_____

APPEARANCES:                                           OF COUNSEL:

LAMONT ADAMS
  *Pro Se* Plaintiff
548 Van Siden Avenue, Apt 2 F
Brooklyn, New York 11207

LETITIA A. JAMES                                      BRITTANY HANER, ESQ.
Attorney General for the State of New York            HELENA PEDERSON, ESQ.
  Counsel for Defendant                               Assistant Attorney General
The Capitol
Albany, New York 12224


MIROSLAV LOVRIC, United States Magistrate Judge

## REPORT and RECOMMENDATION

        Currently before the Court, in this civil rights action filed by Lamont Adams ("Plaintiff")

against Terrence X. Tracy ("Defendant"), is Defendant's motion for summary judgment pursuant

to Fed. R. Civ. P. 56.[1]  (Dkt. No. 31.)  For the reasons set forth below, I recommend that

Defendant's motion be granted in part and denied in part.

_____

[1]       Plaintiff filed a document entitled "Motion for Summary Judgment" on April 12, 2023.
(Dkt. No. 34.)  Plaintiff's submission fails to meet the requirements of a Motion for Summary
Judgment, despite Plaintiff's labeling it as such.  First, under N.D.N.Y Local Rule 56.1(a), a

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Claims

At this procedural posture, Plaintiff asserts the following two claims against Defendant: (1) one claim that his right to due process was violated by the administrative imposition of post-release supervision ("PRS"); and (2) one claim that his right to due process was violated by the imposition of a special condition of parole. (Dkt. No. 4 at 7; Dkt. No. 6; Dkt. No. 7 at 5-6.)

### B.    Defendant's Statement of Undisputed Material Facts

Unless otherwise noted, the following facts were asserted and supported by Defendant in his Statement of Material Facts and not denied by Plaintiff in a response. (*Compare* Dkt. No. 31, Attach. 1 [Def.'s Statement of Material Facts], *with* Dkt. No. 34 [Pl's Resp.].)

1.    At all times relevant to the Amended Complaint in this action, Defendant was counsel for the New York State Division of Parole.

2.    On January 16, 2002, Plaintiff pleaded guilty to third degree attempted criminal possession of a weapon.

---

Motion for Summary Judgment "shall contain a separate Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, a short and concise statement of each material fact about which the moving party contends there exists no genuine issue." N.D.N.Y. L.R. 56.1 (a). Plaintiff does not file a Statement of Material Facts in support of his purported "Motion for Summary Judgment." (*See* Dkt. No. 34.) His affidavit (Dkt. No. 34 at 1-2), does not suffice. Additionally, Plaintiff's affidavit does not contain citations to the record, as required by the Local Rules. (Dkt. No. 34 at 1-2.) Second, the dispositive motion filing deadline expired on February 13, 2023. (Dkt. No. 30.) Plaintiff filed his purported "Motion for Summary Judgment" approximately two months past that deadline. He did not request from the Court an extension of the dispositive motion deadline. In light of special solicitude, the undersigned will construe Plaintiff's submission (Dkt. No. 34) as a part of Plaintiff's response in opposition to Defendant's Motion for Summary Judgment; however, the undersigned will not consider this submission to be a Motion for Summary Judgment for the reasons set forth herein.

3.      On February 7, 2002, Plaintiff was sentenced by the New York State Supreme Court, Kings County, to a determinate term of three years' imprisonment.

4.      At the time of Plaintiff's sentencing, New York Penal Law § 70.45 ("Jenna's Law") required Plaintiff to serve a term of post-release supervision ("PRS") upon his release from incarceration from the New York State Department of Correctional Services ("DOCS") to the Division of Parole ("DOP").  New York Penal Law § 70.45 (McKinney's 1998).

5.      In 2002, Jenna's Law did not require judges to explicitly state the mandatory term of PRS at the time of sentencing.  New York Penal Law § 70.45 (McKinney's 1998).

6.      In 2002, the DOP and DOCS were separate entities.  DOCS merged with DOP in March 2011 to form the New York State Department of Corrections and Community Supervision ("DOCCS").

7.      In 2008, following rulings form both state and federal courts, Jenna's Law was amended to require sentencing judges to articulate and explicitly impose a PRS term at sentencing.

8.      Plaintiff's sentencing court pronounced that a mandated PRS term would be included in Plaintiff's sentence on the record at the time of his guilty plea.

9.      Plaintiff's sentencing court did not pronounce *the length* of the PRS term that would be served on the record at the time of his sentencing.

10.     After his conviction, DOCS calculated Plaintiff's sentence to include both the three-year determinate term of imprisonment pronounced at his sentencing and a five-year term of PRS.

11.     On September 3, 2004, Plaintiff was released from DOCS's custody and placed under the jurisdiction of the Division of Parole to serve a five-year term of PRS.

12.    The maximum expiration of Plaintiff's determinate term was August 4, 2006.

13.    The maximum expiration date of his PRS term was September 3, 2009.

14.    On or about April 13, 2006, Plaintiff's parole officer imposed a special condition upon Plaintiff that required him to attend a drug treatment program.

15.    Parole officers have discretion to impose special conditions upon parolees where circumstances warrant them.

16.    Plaintiff did not make any attempt to contest or appeal the special condition at any time, or in any manner other than purportedly complaining to his parole officer's supervisor.

17.    According to Plaintiff's parole file, he reported to his parole officer on or about January 10, 2007, that he would complete a drug treatment program by January 17, 2007, but parole records indicate that he did not complete it until May of 2007.

18.    On September 22, 2008, Defendant sent a "Notice Pursuant to Correction Law § 601-d" to the sentencing court.

19.    In the Notice, Defendant advised that Plaintiff was a "designated person" under Correction Law § 601-d and noted:

> The Division of Parole's records indicate that the above-named individual was sentenced by you to a 3 year determinate sentence of imprisonment on 02/07/2022. Penal Law § 70.45 requires that whenever a determinate sentence of imprisonment is imposed, the court must also impose a period of post-release supervision (PRS). The original sentence and commitment document that was delivered to the New York State Department of Correctional Services, and subsequently to the Division of Parole, a copy of which is enclosed, contained no reference to a period of PRS. In addition, the Division of Parole does not have a copy of the sentencing minutes within its files to confirm whether the period of PRS was pronounced by the Court at the time of sentencing.

Defendant provided Plaintiff's current address and requested "certified copies of any superseding or amended commitment order[.]"

20.     On or about October 27, 2008, Plaintiff received notification that a re-sentencing hearing would be held in New York State Supreme Court in Kings County on December 4, 2008.[2]

21.     Plaintiff's resentencing hearing was adjourned because the sentencing court was not in possession of his sentencing minutes.

22.     Plaintiff's resentencing hearing was held on May 1, 2009.

23.     During Plaintiff's resentencing hearing, the Court noted:

> It appears from our discussion at the bench that post-release supervision was mentioned in the minutes without specifying what the period would be.
>
> I would note that the defendant is a second felony offender, the period would have to be five which was imposed by the Department of Corrections and I understand he's been several months [sic] after having completed the entire five years of post-release supervision.

24.     The Court exercised its discretion and declined to impose an additional term of PRS.

25.     When Jenna's Law was amended in 2008, the required PRS term for violent felony offenders like Plaintiff remained five years, unless a District Attorney consented to the imposition of no PRS term.  New York Penal Law § 70.45 (McKinney's 2009).

26.     Plaintiff was not reincarcerated at any time between his 2002 release and his 2009 resentencing.

27.     In 2010, Plaintiff returned to DOCS' custody in connection with new criminal charges.

---

[2]     In support of this fact asserted, Defendant cites to "Dkt. 5 at p. 15; Dkt. 1-2 p. 16" however, there is only one page in Dkt. No. 5.  Notwithstanding, support exists for this fact asserted at Dkt. No. 1, Attach. 2 at 16.

### C.    Parties' Briefing on Defendant's Motion for Summary Judgment

#### 1.    Defendant's Memorandum of Law

Generally, in support of his motion for summary judgment, Defendant asserts the following seven arguments: (1) Plaintiff's claim related to the special condition of parole is barred by the statute of limitations; (2) in the alternative, Plaintiff failed to state a claim upon which relief may be granted related to the special parole condition; (3) Plaintiff fails to state a due process claim related to the administrative imposition of PRS; (4) in the alternative, Defendant is entitled to qualified immunity related to the administrative imposition of PRS claim; (5) in the alternative, Defendant's liability on the administrative imposition of PRS claim should be time-limited; (6) in the alternative, Plaintiff should be entitled to only nominal damages on his administrative imposition of PRS claim; and (7) Plaintiff failed to mitigate his damages as to both of his claims.  (*See generally* Dkt. No. 31, Attach. 2.)

More specifically, first, Defendant argues that although this Court applied equitable tolling to Plaintiff's administratively imposed PRS claim due to his status as a class action plaintiff in *Betances v. Fischer*, S.D.N.Y. Index No. 1:11-CV-3200, that action did not challenge special conditions of parole.  (Dkt. No. 31, Attach. 2 at 16-17.)  Defendant argues that thus, to the extent that Plaintiff was a class member in *Betances*, it does not support extension of equitable tolling to Plaintiff's claim related to the special conditions of parole.  (*Id.*)

Second, Defendant argues that even if the imposition of a special parole condition was a constitutional violation, Plaintiff failed to allege that Defendant was personally involved in the alleged violation.  (Dkt. No. 31, Attach. 2 at 17-18.)

Third, Defendant argues that Plaintiff fails to state a claim upon which relief may be granted with respect to his due process claim because he was afforded sufficient process at his

sentencing where he was informed that the sentence would include a term of PRS.  (Dkt. No. 31, Attach. 2 at 18-22.)  Moreover, Defendant argues that Plaintiff was not entitled to a sentence without PRS under either the old or new construction of Jenna's Law.  (*Id*.)  Further, Defendant argues that Plaintiff was not entitled to be relieved of PRS, he was only entitled to be referred for resentencing without delay.  (*Id*.)  Defendant argues that he (and DOCS) had no authority or duty to seek to re-sentence inmates or parolees who received administratively imposed PRS until June 30, 2008, when the Legislature provided a statutory method for doing so.  (*Id*.)  Defendant asserts that after DOP was authorized to make referrals to sentencing courts in 2008, he made Plaintiff's referral pursuant to the law within the time frame established in the July 2008 Memorandum of Understanding.[3]  (*Id*.)  Defendant argues that because Plaintiff's PRS was statutorily mandated, Plaintiff suffered no compensable injury or damages as a result of the administratively imposed PRS.  (*Id*.)

Fourth, Defendant argues that he is entitled to qualified immunity because he could have reasonably believed that an individual—like Plaintiff—whose sentencing court pronounced PRS at sentencing (but failed to state the duration of the PRS term), was serving a lawful term of PRS and did not require resentencing.  (Dkt. No. 31, Attach. 2 at 22-27.)  In addition, Defendant argues that he could have reasonably believed that he had no authority to refer parolees with

---

[3]     Defendant asserts in his memorandum of law that in July 2008, the Office of Court Administration entered a Memorandum of Understanding ("MOU") with DOCS and DOP, to provide an orderly procedure for returning "designated persons" to their sentencing courts.  (Dkt. No. 31, Attach. 2 at 12.)  Defendant asserts that pursuant to the MOU: (1) first priority in resentencing was given to incarcerated individuals in custody who had been returned from DOP supervision for parole violations, (2) second priority in resentencing was given to parolees engaged in the parole violation process and incarcerated in a local jail, and (3) finally, parolees—like Plaintiff—who were not subject to parole revocation proceedings and were merely required to report as scheduled to their parole officers and otherwise reside in the community pursuant to their parole conditions, were last priority for resentencing.  (*Id*. at 12-13.)

potential PRS problems for resentencing until N.Y. Corr. Law § 601-d was enacted in June 2008, and Defendant followed the MOU to orderly resentence thousands of individuals.  (*Id*.) Defendant argues that it was objectively reasonable to (1) wait for legislative authorization before attempting to have Plaintiff resentenced, (2) continue to supervise Plaintiff until he had been resentenced.  (*Id*.)  Further, Defendant asserts that he lacked definitive information to determine whether PRS had been properly announced because the executive agencies lacked sentencing minutes from Plaintiff's sentencing.  (*Id*.)

Fifth, Defendant argues that, to the extent any of Plaintiff's claims survive, the period of Defendant's liability should be limited to the time between the end of Plaintiff's "conditional release" status and the date Defendant took reasonable steps to comply with *Earley*.[4]  (Dkt. No. 31, Attach. 2 at 27-28.)  However, Defendant then argues that the time should actually begin on August 31, 2006, the date that the Second Circuit denied rehearing of *Earley*,[5] which was after Plaintiff's maximum expiration date.  (*Id*.)  In addition, Defendant argues that the time should end on April 1, 2008—when he began taking objectively reasonable steps to comply with *Earley*—or at the latest, September 22, 2008—when he sent a N.Y. Corr. Law § 601-d letter to Plaintiff's sentencing court.  (*Id*.)

Sixth, Defendant argues that Plaintiff was never reincarcerated as a result of PRS and thus, should only be awarded nominal damages if there is a finding of liability.  (Dkt. No. 31, Attach. 2 at 28-31.)  Moreover, Defendant argues that since the sentencing court did not resentence Plaintiff to PRS, the period of arguably unconstitutional PRS that he served was not covered by a resentencing.  (*Id*.)  Defendant argues that, as a result, Plaintiff should only be

---

[4]     *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006).

[5]     *Earley v. Murray*, 462 F.3d 147 (2d Cir. 2006).

awarded nominal damages (if at all) and not damages based on some undefinable value of infringed rights. (*Id*.)

Seventh, Defendant argues that Plaintiff failed to mitigate his damages by his failure to file a *habeas corpus* or N.Y. C.P.L.R. Article 78 petition seeking release from PRS or vacating the PRS term from his sentence. (Dkt. No. 31, Attach. 2 at 31-32.)

### 2.    Plaintiff's Opposition

Generally, in opposition to Defendant's motion, Plaintiff argues that (1) the circumstances did not warrant the imposition of a special condition requiring drug treatment where Plaintiff had no history of drug use and had been successful with his parole conditions for twenty months before the special condition was imposed and this claim is not time barred; (2) Defendant unconstitutionally violated Plaintiff's rights in failing to promptly correct Plaintiff's PRS following the court's decision in *Earley* thus, Defendant is liable for the special conditions and all the other conditions enforced upon Plaintiff during the term of his PRS; (3) Plaintiff did not receive full process by the mere mention of PRS during his sentencing because he was not informed of the length of his PRS term and he was damaged by the cost of his PRS fees and enforcement of the terms of his PRS that resulted in the loss of employment and benefits; (4) the holdings in *Earley* and *Betances* (Plaintiff asserts that he is currently a party to the action in *Betances*) are controlling and the Second Circuit held that Defendant was liable for the years-long delay in complying with *Earley*; (5) his damages against Defendant should be time-limited and should run from November 29, 2006 (90-days after the re-hearing denial in *Earley*), until December 4, 2008, when he was resentenced; (6) he is entitled to more than nominal damages because (a) the cases cited by Defendant asserting that Plaintiff is only entitled to nominal damages are inapplicable, and (b) Plaintiff was not resentenced at all and instead the sentencing

court removed the PRS; and (7) Plaintiff was not required to file a *habeas corpus* or article 78 petition for Defendant to stop violating his rights and Defendant could have settled this matter with Plaintiff.  (Dkt. No. 34 at 3-16.)

### 3.    Defendant's Reply

Generally, in further support of his motion for summary judgment, Defendant asserts the following two arguments: (1) Plaintiff's cross-motion must be denied, (2) Defendant is entitled to summary judgment because (a) Plaintiff's claim regarding the special condition of parole is time barred, (b) Defendant was not personally involved in the imposition of the special condition of parole, (c) Plaintiff's claim regarding the administrative imposition of PRS should be dismissed because he is a member of a duplicative class-action lawsuit in *Betances*, (d) Plaintiff failed to state a claim upon which relief may be granted with respect to his administrative imposition of PRS claim, (e) Plaintiff failed to mitigate his damages with respect to his administrative imposition of PRS claim, (f) Plaintiff is entitled to only nominal damages on both claims, (g) Defendant's liability on both claims should be time-limited, and (h) Defendant is entitled to qualified immunity on both claims.  (*See generally* Dkt. No. 37.)

## II.    RELEVANT LEGAL STANDARDS GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[6]  As for the materiality requirement, a dispute of fact is

---

[6]      As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation

"material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c), (e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-movant is proceeding *pro se*.[7] (This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[8] As has often been recognized by both

---

omitted). As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

[7]    *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

[8]    *Cusamano*, 604 F. Supp. 2d at 426 & n.3 (citing cases).

the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[9]

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Grp., Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 56.1. What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 56.1(b) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement[10]–even when the non-movant was proceeding *pro se*.[11]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local

---

[9]    *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

[10]    Among other things, Local Rule 56.1 (previously Local Rule 7.1(a)(3)) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 56.1.

[11]    *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases); *see also Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 371 (N.D.N.Y. 2003) (Hurd, J.) (holding that the Court is not required to "perform an independent review of the record to find proof of a factual dispute.").

Rule 7.1(a)(3).[12]  Stated another way, when a non-movant fails to oppose a legal argument

asserted by a movant, the movant may succeed on the argument by showing that the argument

possesses facial merit, which has appropriately been characterized as a "modest" burden.  *See*

N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determined

that the moving party has met its burden to demonstrate entitlement to the relief requested

therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct.

30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009

WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III.    ANALYSIS

### A.    Whether Plaintiff's Claim Regarding a Special Condition of Parole is Subject to Equitable Tolling

After carefully considering the matter, I answer this question in the affirmative.

Contrary to Defendant's assertion that the Court only "applied equitable tolling to some

of Plaintiff's claims" (Dkt. No. 31, Attach. 2 at 16), Senior United States District Judge Gary L.

Sharpe held that "the statute of limitation on [P]laintiff's Fourteenth Amendment claims tolled

when the *Betances* action was filed."  (Dkt. No. 7 at 5.)  Hence, Judge Sharpe directed Defendant

"to respond to [P]laintiff's Fourteenth Amendment claims."  (Dkt. No. 7 at 5.)  Judge Sharpe was

---

[12]     *See*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31
(N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to
oppose several arguments by defendants in their motion for summary judgment as consent by
plaintiff to the granting of summary judgment for defendants with regard to the claims that the
arguments regarded, under Local Rule 7.1(a)(3) (previously Local Rule 7.1(b)(3)); *Devito v.
Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004)
(McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude
expert testimony as "a concession by plaintiff that the court should exclude [the expert's]
testimony" on that ground).

explicit in finding that equitable tolling applied with respect to **both** of Plaintiff's due process claims. (*Id.*)

Moreover, although Defendant contends that *Betances* "dealt with Plaintiff's primary claim related to the administrative imposition of PRS" (Dkt. No. 31, Attach. 2 at 17), it also included consideration of special damages based on the unique specific conditions each class member experienced during the administratively imposed PRS. *Betances v. Fischer*, 11-CV-3200, 2022 WL 765963, at *3 (S.D.N.Y. Mar. 14, 2022).

Thus, I reject Defendant's argument that Plaintiff's due process claim related to the special condition of his parole should be dismissed as untimely. As a result, I recommend that Defendant's motion for summary judgment seeking dismissal as untimely Plaintiff's claim regarding the special condition of parole, be denied.

### B. Whether Defendant was Personally Involved in the Imposition of the Special Condition of Parole

To the extent that Plaintiff's due process claim related to his special condition of parole is construed as asserting that the imposition of the special condition was arbitrary and capricious, I recommend that the claim be dismissed because it fails to allege the personal involvement of Defendant as set forth in Defendant's memoranda of law.[13] (Dkt. No. 31, Attach. 2 at 17-18; Dkt. No. 37 at 9-10.)

"[P]arolees are entitled to some form of due process in the imposition of special conditions of parole." *Pollard v. United States Parole Comm'n*, 15-CV-9131, 2016 WL 3167229,

---

[13] Notwithstanding this recommendation, I recommend that—to the extent Plaintiff is permitted to seek compensatory damages related to his administrative imposition of PRS claim—he be permitted to seek special damages based on the unique specific conditions he experienced during the term of the administratively imposed PRS. *Betances v. Fischer*, 11-CV-3200, 2022 WL 765963, at *3 (S.D.N.Y. Mar. 14, 2022).

at *4 (S.D.N.Y. June 6, 2016) (citing cases). "In the Second Circuit, special restrictions on a parolee's rights are upheld where they 'are reasonably and necessarily related to the interests that the Government retains after his conditional release.'" *Muhammad v. Evans*, 11-CV-2113, 2014 WL 4232496, at *9 (S.D.N.Y. Aug. 15, 2014) (quoting *Birzon v. King*, 469 F.2d 1241, 1243 (2d Cir. 1972)). Conditions will be upheld if there is a reasonable relationship to the parolee's prior conduct or to a legitimate government interest such as rehabilitation, the prevention of recidivism and future offenses, and protection of the public. *Singleton v. Doe*, 210 F. Supp. 3d 359, 372-74 (E.D.N.Y. 2016) (citing cases). On the other hand, if conditions are arbitrary and capricious, they will be invalidated. *See, e.g.*, *Boddie v. Chung*, 09-CV-4789, 2011 WL 1697965, at *2 (E.D.N.Y. May 4, 2011) (citing cases).

Here, as set forth in Defendant's moving memorandum of law, Plaintiff fails to allege in the Amended Complaint—and fails to identify any evidence in the record—that Defendant was personally involved in the alleged due process violation adding a special condition to his parole that required substance abuse treatment. Instead, Plaintiff alleges that on April 12, 2006, his newly assigned parole officer required that he enroll in a drug treatment program. (Dkt. No. 6 at 4-5.) Plaintiff does not identify any portion of the record establishing a genuine issue of fact that Defendant was involved in the imposition of the special condition of parole. In addition, the undersigned notes that this special condition was imposed approximately four months before the maximum expiration of Plaintiff's determinate term on August 4, 2006. (Dkt. No. 31, Attach. 3 at 20.) Further, the special condition was imposed before the Second Circuit's decision in *Earley* on June 9, 2006, *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006). Thus, at the time the special condition was imposed, there was no legal basis for Defendant to take any action with respect to the special conditions of Plaintiff's parole.

As a result, I recommend that Defendant's motion for summary judgment seeking dismissal of Plaintiff's special condition of parole claim be dismissed because Plaintiff fails to allege the personal involvement of Defendant.

   **C.    Whether Plaintiff Stated a Claim for Due Process Related to the Administrative Imposition of PRS**

After carefully considering the matter, the undersigned answers this question in the affirmative.

On January 16, 2002, Plaintiff pleaded guilty to attempted criminal possession of a weapon, a class E violent felony. (Dkt. No. 31, Attach. 3 at 20, 56-63.) During Plaintiff's guilty plea, the Court mentioned that "there is also a period of mandatory of post-release supervision on this case." (*Id.* at 61.) On February 7, 2002, Plaintiff was sentenced to three years incarceration "pursuant to our agreement" and did not mention any term of PRS. (Dkt. No. 31, Attach. 3 at 64-66.)

I find that an issue of fact remains for trial whether the sentencing judge's failure to announce the length of the PRS term violates due process.

The Second Circuit in *Earley v. Murray*, held that "[a] judicially-imposed sentence includes only those elements explicitly ordered by the sentencing judge" and thus concluded that "the inclusion of a five-year period of post-release supervision in [the petitioner's] sentence when that [provision] was not included in the sentence imposed at [his] sentencing hearing violated his rights under the Due Process Clause of the United States Constitution." 462 F.3d 147, 148.

Here, the sentencing judge did not impose a term of PRS during sentencing. (Dkt. No. 31, Attach. 3 at 64-66.) Instead, DOCS added "a five-year period of PRS which the Plaintiff was to serve until September 3, 2009." (Dkt. No. 31, Attach. 3 at 3 ¶ 7.)

16

Even assuming *arguendo* that the sentencing judge mentioned a mandatory PRS term during sentencing—which is not reflected in the record from the sentencing (Dkt. No. 31, Attach. 3 at 64-66)—there was discretion regarding the length of that PRS term.

Penal Law § 70.45(2)—at the time of Plaintiff's sentencing—stated that:

> The period of post-release supervision for a determinate sentence shall be five years except that such period shall be three years whenever a determinate sentence of imprisonment is imposed pursuant to section 70.02 of this article upon a conviction for a class D or class E violent felony offense; provided, however, that when a determinate sentence is imposed pursuant to section 70.02 of this article, the court, at the time of sentence, may specify a shorter period of post-release supervision of . . . not less than one and one-half years upon a conviction for a class D or E violent felony offense.

Penal Law § 70.45(2); *see People ex rel. White v. Warden, Rikers Island Corr. Facility*, 15 Misc. 3d 360, 366-67 (N.Y. Sup. Ct. Bronx Cnty. 2007) (discussing the options a sentencing judge has when imposing PRS terms on an individual convicted of a class D or class E violent felony offense).

Hence, even if a period of PRS was mandatory, the exact length of that term was not mandated by the Penal Law. "Instead, while the sentencing court could have imposed a period of three years, it also had discretion to impose a period of as little as one and a half years." *People ex rel. White*, 15 Misc. 3d at 369. Thus, because the sentencing judge did not specify a period of PRS either orally or in the order of commitment, "it appears that the discretion was exercised . . . by the Department of Correctional Services, which set that period at the maximum." *Id.*

Moreover, Defendant cites *United States v. Daniels*, 22-0263, 2023 WL 1113539, at *1 (2d Cir. Jan. 31, 2023), in support of his contention that "'robotic incantations' of each part of a sentence [is] not required or constitutionally compelled." (Dkt. No. 31, Attach. 2 at 18-19.) However, the portion of *Daniels* that Defendant cites, relates to explaining a sentence imposed

for revocation of supervised release.  *Daniels*, 2023 WL 1113539, at *1.  More specifically, the Second Circuit advised that district courts are not required "to recite 'robotic incantations' where a sentence has been adequately explained."  *Id.*  Unlike the sentencing court in *Daniels*, the Supreme Court of Kings County (which sentenced Plaintiff) did not indicate the length of Plaintiff's PRS term.  (*Compare Daniels*, 2023 WL 1113539, at *1 [stating that the district court imposed a "five-year term of supervised release"], *with* Dkt. No. 31, Attach. 3 at 56-66 [mentioning—during Plaintiff's guilty plea—that there is a period of mandatory PRS].)

Contrary to Defendant's argument that Plaintiff "was not entitled to be relieved of PRS" (Dkt. No. 31, Attach. 2 at 19), the Second Circuit has clearly articulated that "*Earley* gave the state the option of either (1) arranging for defendants subject to null and void PRS terms to be appropriately resentenced or (2) excising their PRS terms."  *Vincent v. Annucci*, 63 F.4th 145, 147 (2d Cir. 2023).  Further, while the Second Circuit explicitly opted to express "no opinion as to whether resentencing would have been possible for defendants [like Plaintiff] . . . who were serving administratively imposed PRS but were not reincarcerated for violating PRS," *Vincent*, 63 F.4th at 154 n.53, the decision in *Vincent* strongly suggested that resentencing was foreclosed as an option upon release from incarceration.  *Vincent*, 63 F.4th at 153 ("Resentencing 'for the imposition of PRS terms' connotes amending the sentence to add PRS *in the first instance*.  Once a defendant serves his original sentence, however, a court cannot reverse the 'error' and retroactively validate DOC's *ultra vires* and unlawful imposition of PRS.")  Thus, the only "remaining option, as outlined in *Earley*, was to excise the terms of the null and void administratively imposed PRS."  *Vincent*, 63 F.4th at 154.

For each of these reasons, I find that an issue of fact remains for trial with respect to the administrative imposition of PRS due process claim.  As a result, I recommend that Defendant's motion for summary judgment in this respect be denied.

### D.    Whether Defendant is Entitled to Qualified Immunity

After carefully considering the matter, I answer this question in the negative.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Brown v. City of New York*, 862 F.3d 182, 190 (2d Cir. 2017) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  In other words, "[an] officer is entitled to qualified immunity if (1) his conduct does not violate a clearly established constitutional right, or (2) it was 'objectively reasonable' for the officer to believe his conduct did not violate a clearly established right." *Hartline v. Gallo*, 546 F.3d 95, 102 (2d Cir. 2008).  When determining whether the right at issue is clearly established such that "the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right," a court should ask "(1) Was the law defined with reasonable clarity? (2) Had the Supreme Court or the Second Circuit affirmed the rule? and (3) Would a reasonable defendant have understood from the existing law that the conduct was unlawful?" *Gonzalez v. City of Schenectady*, 728 F.3d 149, 158 (2d Cir. 2013) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Young v. City of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998)) (internal alterations and quotation marks omitted).

This Court is bound by a Second Circuit's decision denying qualified immunity to a party under the same set of facts and circumstances. *Vincent v. Annucci*, 63 F.4th 145, 150-51 (2d Cir. 2023).

Relevant here, the Second Circuit held in *Betances v. Fischer*, that Defendant was not entitled to qualified immunity because he "did not make an objectively reasonable effort 'to relieve [plaintiffs] of the burdens of those unlawfully imposed [PRS] terms after [he] knew it had been ruled that the imposition violated federal law." *Betances v. Fischer*, 837 F.3d 162, 174 (2d Cir. 2016) (quoting *Vincent v. Yelich*, 718 F.3d 157, 177 (2d Cir. 2013)).  The Second Circuit further noted that "[a]s the steps taken by [Defendant] in the wake of *Garner* and *Sparber* demonstrate, [he] could [have] act[ed] in compliance with *Earley I* without the cooperation of state judges and district attorneys." *Betances v. Fischer*, 837 F.3d 162, 174 (2d Cir. 2016) (citing *Garner v. New York State Dep't of Corr. Servs.*, 10 N.Y.3d 358 (N.Y. 2008); *People v. Sparber*, 10 N.Y.3d 457 (N.Y. 2008); *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006)).  Defendant was only required to make an "objective[ly] reasonable[]" effort to comply with *Earley*.  *Betances*, 837 F.3d at 174 (citing *Vincent v. Yelich*, 718 F.3d 157, 177 (2d Cir. 2013)).

The undersigned rejects Defendant's assertion that "unlike in *Earl[e]y*, the sentencing Judge imposed PRS on Plaintiff at the time of sentencing."  (Dkt. No. 31, Attach. 2 at 24.)  As set forth above in Part III.C. of this Report and Recommendation, the sentencing judge mentioned that there was "a period of mandatory post-release supervision" during Plaintiff's guilty plea.  (Dkt. No. 31, Attach. 3 at 61.)  However, during sentencing, the sentencing judge merely stated that Plaintiff was being sentenced "to three years incarceration pursuant to our agreement" (*id*. at 66) and did not mention or otherwise "impose" a term of PRS.  (*See generally* Dkt. No. 31, Attach. 3 at 64-66.)

As a result, I recommend that Defendant's motion for summary judgment based on the doctrine of qualified immunity be denied because the Second Circuit has held that Defendant's actions were not objectively reasonable in response to its holding in *Earley*.

### E.      Whether Plaintiff's PRS Claim Should be Time-Limited

To the extent that the undersigned's above recommendations are adopted, I recommend

that Defendant's motion seeing to limit the time during which Plaintiff may seek damages on his

administratively imposed PRS claim, be granted in part.

As the Second Circuit held in *Betances v. Fischer*, it was reasonable for Defendant to

have waited until August 31, 2006—the date on which the Second Circuit denied rehearing of

*Earley*—to begin to take action.  *Betances v. Fischer*, 837 F.3d 162, 170-72 (2d Cir. 2016)

(citing *Earley v. Annucci*, 462 F.3d 147, 148 (2d Cir. 2006)).

Although Defendant asserts that his liability should end as of April 1, 2008, I reject that

argument.  The Second Circuit noted that Defendant did not take objectively reasonable steps to

comply with *Earley* until <u>at least April 2008</u>.  *Betances v. Fischer*, 837 F.3d at 172.  Thus, the

Second Circuit did not hold that Defendant's liability ended on April 1, 2008.  Instead, it stated

that Defendant's liability continued through *at least* April 1, 2008.  In this case, Defendant took

action to come into compliance with *Earley* on September 22, 2008, when he sent a letter

pursuant to N.Y. Corr. Law § 601-d to Plaintiff's sentencing court.  (Dkt. No. 31, Attach. 3 at 3,

¶ 9; Dkt. No. 31, Attach. 3 at 33-34.)

Thus, to the extent that Plaintiff is successful in his due process claim related to the

administrative imposition of PRS, I recommend that liability be limited for the time period of

August 31, 2006, until September 22, 2008.

### F.      Whether Plaintiff is Entitled to Only Nominal Damages

After carefully considering the matter, I recommend that the Court answer this question

in the negative at this juncture.

28.      As set forth above in Part III.C. of this Report and Recommendation, the Second

Circuit in *Vincent v. Annucci*, forewent deciding whether individuals (like Plaintiff) who

completed their original sentence but were not reincarcerated for violation of the administratively imposed PRS, could be resentenced to retroactively validate DOCS's unlawful imposition of PRS. *Vincent v. Annucci*, 63 F.4th 145, 154 n.53 (2d Cir. 2023). However, it is the undersigned's interpretation of the *dicta* in that case, that once an individual serves his original sentence, the sentencing court could not reverse its prior "error" and retroactively validate DOCS's unlawful administrative imposition of PRS. *Vincent*, 63 F.4th at 154. Thus, although resentencing may have been an option for certain individuals who remained incarcerated, it was not—based on the undersigned's interpretation of *Vincent*—a viable avenue with respect to Plaintiff because he had already been released from incarceration (on September 3, 2004), well before the Second Circuit's ruling in *Earley* on June 9, 2006.[14] *Id.*; *see also Aponte v. Perez*, 20-2186, 2023 WL 4630502, at *6-7 (2d Cir. July 20, 2023) (finding that the plaintiff there could have been resentenced *nunc pro tunc* to comply with *Earley* because the plaintiff's determinate sentence did not expire until at least 2008 and he was not conditionally released until January 16, 2007).

Plaintiff has identified damages he sustained as a result of being on PRS including but not limited to paying supervision fees in the amount of $30.00 per month, and paying $60.00 per month for the drug treatment program. (Dkt. No. 6 at 8; *see also* Dkt. No. 34 at 12.) Thus, Plaintiff has raised an issue of fact for trial whether he is entitled to compensatory damages for

---

[14]    The undersigned notes that the maximum expiration of Plaintiff's determinate sentence was August 4, 2006. Thus, arguably, Plaintiff could have been resentenced during the period of June 9, 2006, and August 4, 2006. Notwithstanding, the motion for a rehearing in *Earley* was denied on August 31, 2006, which was after the maximum expiration of Plaintiff's determinate sentence, and the date on which the Second Circuit has held it was reasonable for Defendant to begin to take action. *Betances*, 837 F.3d at 170-72 (2d Cir. 2016) (citing *Earley*, 462 F.3d at 148).

Defendant's alleged failure to take reasonable steps to address the unconstitutional administrative imposition of PRS after the *Earley* decision in 2006.

Moreover, the Second Circuit in *Aponte v. Perez*, made clear that Defendant's "deliberate refusal to comply with *Earley* therefore shows 'conscious wrongdoing' and a 'reckless or callous indifference to [ ] federally protected rights,' and hence can serve as a basis for punitive damages." *Aponte v. Perez*, 20-2186, 2023 WL 4630502, at *5 (2d Cir. July 20, 2023) (citing *New Windsor Vol. Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 121 (2d Cir. 2006)). The Second Circuit underscored that "[p]unitive damages may be especially appropriate here [because] 'punitive damages serve the dual purpose of deterrence and retribution,' and the 'purpose of § 1983 is not only to provide compensation to the victims of past abuses, but to serve as a deterrent against future constitutional deprivations, as well.'" *Aponte*, 2023 WL 4630502, at *5 (quoting *Ciraolo v. City of New York*, 216 F.3d 236, 242 (2d Cir. 2000)).

As a result, I recommend that Defendant's motion for summary judgment seeking to limit Plaintiff's damages to nominal damages only be denied at this juncture.

**G.    Whether Plaintiff Mitigated His Damages**

I recommend that Defendant be permitted to assert a failure to mitigate defense at trial and that the finder of fact may consider such arguments if it determines that Plaintiff has established a due process claim.

"The principle of mitigation requires that victims of torts or other legal wrongs make reasonable efforts to reduce their damages once they have been injured." *Betances v. Fischer*, 11-CV-3200, 2023 WL 2609133, at *2 (S.D.N.Y. Mar. 23, 2023) (citing *APL Co. PTE Ltd. v. Blue Water Shipping U.S. Inc.*, 592 F.3d 108, 111 (2d Cir. 2010) (party claiming injury due to breach of contract "bears an obligation to make reasonable efforts to mitigate its damages and

failure to do so may cause a court to lessen the recovery"); *Hawkins v. 1115 Legal Service Care*, 163 F.3d 684, 696 (2d Cir. 1998) ("An employee discharged in violation of Title VII has an obligation to attempt to mitigate her damages by using reasonable diligence in finding other suitable employment") (internal quotation marks omitted).

Moreover, mitigation is an available defense in § 1983 claims. *Betances v. Fischer*, 2023 WL 2609133, at *2 (citing *See Rich v. Miller*, 21-CV-3835, 2022 WL 7748176, at *6 (S.D.N.Y. Oct. 4, 2022) ("Courts have held that the duty to mitigate damages applies to plaintiffs in § 1983 actions") (quoting *Alvarez v. Haywood*, 06-CV-745, 2011 WL 13130851, at *4 (N.D.N.Y. Aug. 29, 2011))). However, "[t]here can be no duty to mitigate damages until the injury causing those damages actually occurs." *Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989) (rejecting notion that plaintiff had duty to mitigate injuries incurred during arrest by not getting arrested in the first place and noting "[i]f a plaintiff's duty to mitigate damages were to include the duty to avoid the underlying injury, few arrestees could recover damages under § 1983 since most could have 'avoided' engaging in the conduct that precipitated the arrest"), *partially abrogated on other grounds by Graham v. Connor*, 490 U.S. 386 (1989).

Here, like the class of plaintiffs in *Betances*, Plaintiff was a "victim[] of a constitutional wrong when PRS was administratively imposed on [him] without a judge having done so. But Plaintiff[] did not incur any actual injury giving rise to damages until Defendant[] enforced, or failed to take reasonable actions to prevent enforcement of, the unconstitutionally imposed PRS." *Betances*, 2023 WL 2609133, at *3. Stated differently, "no wrongful conduct causing injury occurred until Defendant[] failed to act within a reasonable time after *Earley* issued and instead prolonged enforcement of wrongfully imposed PRS." *Id*.

24

Mitigation is not relevant to "damages for injury sustained from continued enforcement of unconstitutionally imposed PRS." *Id*. at * 4. However, mitigation may be relevant to the extent that Plaintiff seeks damages related to the unique conditions he experienced on administratively imposed PRS. For example, the *Betances* court noted "a plaintiff who was physically injured while wrongfully incarcerated potentially could be subject to a mitigation defense if he did not cooperate in seeking treatment for the injury." *Id*. However, Defendant has not put forward any such evidence of a similar theoretical scenario here.

As a result, I recommend that Defendant's motion for summary judgment on Plaintiff's due process claim based on the defense of mitigation be denied. However, I recommend that Defendant be permitted to present the defense of mitigation—to the extent it is relevant—at trial.[15]

**ACCORDINGLY**, it is respectfully

**RECOMMENDED** that Defendant's motion for summary judgment (Dkt. No. 31) be **GRANTED** to the extent that it sought (1) dismissal of Plaintiff's due process claim related to the arbitrary and capricious imposition of a special condition of parole; and (2) to limit the time period of liability on Plaintiff's administratively imposed PRS due process claim from August 31, 2006, until September 22, 2008; and **DENIED** to the extent that it sought (1) dismissal of Plaintiff's administratively imposed PRS due process claim, (2) to limit damages to nominal damages only, (3) dismissal based on the doctrine of qualified immunity, and it is further

---

[15]    As noted above, Plaintiff stated in his opposition memorandum of law that he is currently a party in the class action in *Betances*. (Dkt. No. 34 at 13-14.) This is in contrast with Plaintiff's "answer to the court about timeliness" where he stated that he opted out from the class action on December 20, 2020. (Dkt. No. 5.) Judge Sharpe concluded that equitable tolling applied to Plaintiff's claims based on the understanding that Plaintiff was no longer a class member in *Betances*. I recommend that Plaintiff be directed to show cause, in writing why the Court should not dismiss this case as duplicative if Plaintiff is still a class member in *Betances*.

**ORDERED** that the Clerk of the Court shall file a copy of this Report-Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[16]

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.[17]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: August 10, 2023
       Binghamton, New York

Hon. Miroslav Lovric
U.S. Magistrate Judge

---

[16]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[17]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  FED. R. CIV. P. 6(a)(1)(C).