UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

LAMONT ADAMS,

                                **Plaintiff**,

               v.                                          9:21-CV-33
                                                               (FJS/ML)

**TERRENCE X. TRACY,**
*Chief Counsel of Division of Parole*,

                                **Defendant.**

_____

**APPEARANCES**                                **OF COUNSEL**

**LAMONT ADAMS**
548 Van Siden Avenue
Apartment 2 F
Brooklyn, New York 11207
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**         **BRITTANY M. HANER, AAG**
**STATE ATTORNEY GENERAL**         **HELENA O. PEDERSON, AAG**
The Capitol
Albany, New York 12224
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Pending before the Court are Defendant's objections to Magistrate Judge Lovric's Report and Recommendation, *see* Dkt. No. 38, in which he recommends that this Court grant in part and deny in part Defendant's pending motion for summary judgment, *see generally* Dkt. No. 31.

## II. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Lamont Adams, acting *pro se*, commenced this action in January 2021, in which he asserted claims alleging that Defendant Terrence Tracy, as the Chief Counsel of the Division of Parole, violated his constitutional rights when he administratively imposed and enforced on Plaintiff a period of post-release supervision ("PRS").[1] *See generally* Dkt. No. 1, Compl.; Dkt. No. 6, First Amend. Compl. In an April 2021 order, Judge Sharpe ruled that two of Plaintiff's Fourteenth Amendment claims survived the Court's review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). *See* Dkt. No. 7 at 6. First, Plaintiff contends that Defendant violated his constitutional right to due process by administratively imposing a term of PRS on him (hereinafter his "PRS-related claim"); and, second, Plaintiff alleges that Defendant violated his right to due process by imposing a special condition of parole on him (hereinafter his "special condition claim"). *See* Dkt. No. 38, M.J. Lovric's Rep-Rec, at 2 (citing Dkt. Nos. 4, 6, 7).

Plaintiff's claims allegedly stem from a term of PRS he served following a 2002 conviction. Specifically, on January 16, 2002, Plaintiff pled guilty to attempted criminal possession of a weapon in the third degree; and, on February 7, 2002, a judge in New York State Supreme Court, Kings County, sentenced him to a determinate term of three years' imprisonment. *See* Dkt. No. 31-1, Def's Stmt. of Mat. Facts, at ¶¶ 2, 3.[2] At the time of

---

[1] Plaintiff also alleged claims against Anthony J. Annucci, as Deputy Commissioner and Counsel of the Department of Corrections and Community Supervision, and Brian Fischer, as the Former Commissioner of that organization, for this conduct. *See generally* Dkt. No. 1. However, Judge Sharpe dismissed his claims against those Defendants in an April 2021 order. *See* Dkt. No. 7.

[2] Unless otherwise stated, the parties do not dispute the following facts, which the Court takes from Defendant's Statement of Undisputed Material Facts attached to his motion.

Plaintiff's sentencing, New York Penal Law § 40.45, known as "Jenna's Law," required Plaintiff to serve a term of PRS upon his release from incarceration, but it did not require judges to explicitly state the mandatory term of PRS at the time of sentencing. *See id.* at ¶¶ 4-5 (citing N.Y. Penal L. § 70.45 (1998)). Plaintiff's sentencing court pronounced on the record at the time of sentencing that the mandated PRS term would be included in Plaintiff's sentence, but it did not pronounce on the record the length of the PRS term that Plaintiff would have to serve. *See id.* at ¶¶ 8-9. After sentencing, the New York State Department of Correctional Services ("DOCS"), calculated Plaintiff's sentence to include both the three-year determinate term of imprisonment pronounced at his sentencing and an automatic five-year term of PRS, as Jenna's Law mandated. *See id.* at ¶ 10.

On September 3, 2004, when Plaintiff was released from DOCS's custody, he was placed under the jurisdiction of the New York State Division of Parole to serve a five-year term of PRS. *See id.* at ¶ 11.[3] On or about April 13, 2006, Plaintiff's parole officer imposed on him a special condition that required him to attend a drug treatment program. *See id.* at ¶ 14. Parole officers have discretion to impose special conditions upon parolees where circumstances warrant them. *See id.* at ¶ 15. Plaintiff did not make any attempt to contest or appeal the special condition at any time other than purportedly complaining to his parole officer's supervisor. *See id.* at ¶ 16. According to Plaintiff's parole file, he reported to his parole officer on January 10, 2007, that he would complete a drug treatment program by January 17, 2007, but parole records indicate that he did not complete it until May of 2007. *See id.* at ¶ 17.

---

[3] In 2002, DOCS and the Division of Parole were separate entities. *See* Dkt. No. 31-1 at ¶ 6. The two merged in March 2011 to form the New York State Department of Corrections and Community Supervision ("DOCCS"). *See id.*

Beginning in 2006, both state and federal courts considered whether it was unconstitutional for judges to not explicitly state and impose the mandatory term of PRS at the time of sentencing. *See Earley v. Murray*, 451 F.3d 71, 75-77 (2d Cir. 2006), *reh'g denied,* 462 F.3d 147 (2d Cir. 2006), *cert. denied,* 551 U.S. 1159 (2007).[4] In 2008, following rulings from both state and federal courts ruling that it was unconstitutional for judges to not explicitly state the mandatory term of PRS at the time of sentencing, the legislature amended Jenna's Law to replace the provision that indicated that sentences would automatically include PRS terms with the current provision, which requires a judge to articulate and explicitly impose a PRS term at sentencing. *See* Dkt. No. 31-1 at ¶ 7. On September 22, 2008, Defendant forwarded a "Notice Pursuant to Correction Law § 601-d" to the sentencing court, which advised that Plaintiff was a "designated person" under that law, and noted the following:

> The Division of Parole's records indicate that the above-named individual was sentenced by you to a 3 year determinate sentence of imprisonment on 02/07/20[0]2. Penal Law § 70.45 requires that whenever a determinate sentence of imprisonment is imposed, the court must also impose a period of post-release supervision ("PRS"). The original sentence and commitment document that was delivered to the New York State Department of Correctional Services, and subsequently to the Division of Parole, a copy of which is enclosed, contained no reference to a period of PRS. In addition, the Division of Parole does not have a copy of the sentencing minutes within its files to confirm whether the period of PRS was pronounced by the Court at the time of sentencing.

*See id.* at ¶¶ 18-19.

---

[4] The constitutionality of the Division of Parole's actions with respect to administratively imposing these PRS-related terms is still in flux nearly two decades after the Second Circuit's findings in the *Earley* cases. *See generally Aponte v. Perez*, 75 F.4th 49 (2d Cir. 2023); *Vincent v. Annucci*, 63 F.4th 145 (2d Cir. 2023).

On October 27, 2008, Plaintiff received notification that a re-sentencing hearing would be held in New York State Supreme Court in Kings County on December 4, 2008, but that hearing was adjourned. *See id.* at ¶¶ 20-21. That court held Plaintiff's resentencing hearing on May 1, 2009, and the resentencing court noted the following:

> It appears from our discussion at the bench that post-release supervision was mentioned in the minutes without specifying what the period would be . . . I would note that the defendant is a second felony offender, and the period would have to be five which was imposed by the Department of Corrections and I understand he's been several months after having completed the entire five years of post-release supervision.

*See id.* at ¶¶ 22-23.

The Court declined to impose an additional term of PRS. *See id.* at ¶ 24. Plaintiff was not reincarcerated at any time between his 2002 release and his 2009 resentencing. *See id.* at ¶ 26. However, in 2010, Plaintiff returned to DOCS's custody in connection with new criminal charges. *See id.* at ¶ 27.

Following a period of discovery, Defendant filed his pending motion for summary judgment in February of 2023 pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See* Dkt. No. 31. In that motion, Defendant argues the following: (1) Plaintiff's special condition claim is barred by the statute of limitations; (2) Plaintiff fails to state his special condition claim; (3) Plaintiff fails to state his PRS-related claim; (4) Defendant is entitled to qualified immunity as to Plaintiff's PRS-related claim; (5) Defendant's liability on Plaintiff's PRS-related claim is time-barred; (6) Plaintiff is only entitled to nominal damages on his PRS-related claim; and (7) Plaintiff has failed to mitigate his damages as to both claims. *See generally* Dkt. No. 31-2, Def's Memorandum of Law in Support. On April 12, 2023, Plaintiff opposed Defendant's motion and simultaneously submitted a "Motion for Summary Judgment." *See* Dkt. No. 34.

In a Report and Recommendation, issued August 10, 2023, Magistrate Judge Lovric found, for various reasons, that Plaintiff's submission failed to meet the requirements of a motion for summary judgment, despite his labeling it as such. *See* Dkt. No. 38 1 n.1. Magistrate Judge Lovric also recommended that this Court *grant* Defendant's motion for summary judgment to the extent he sought to dismiss Plaintiff's special condition claim and to limit the time period of his liability on Plaintiff's PRS-related claim from August 31, 2006, until September 22, 2008. *See id.* at 25. However, Magistrate Judge Lovric recommended that this Court *deny* Defendant's motion for summary judgment to the extent he sought to dismiss Plaintiff's PRS-related claim, to limit damages to nominal damages only, and to dismiss based on the doctrine of qualified immunity. *See id.* Notably, Magistrate Judge Lovric also recommended that the Court direct Plaintiff to show cause, in writing, as to why the Court should not dismiss this case as duplicative as there was some dispute as to whether Plaintiff was a party in a class action pertaining to his PRS-related claim. *See id.* at 25 n.15. Plaintiff responded to Magistrate Judge Lovric's show-cause order, *see* Dkt. No. 41, and Defendant submitted timely objections to the Report and Recommendation, *see* Dkt. No. 42, which are pending before this Court.

### III. DISCUSSION

A.  **Standard of review**

"When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review." *Crystal IS, Inc. v. Nitride Semiconductors Co, LTD.*, No. 1:21-CV-0606 (GTS/DJS), 2023 U.S. Dist. LEXIS 55975, *5 (Mar. 31, 2023) (Suddaby, J.) (citing Fed. R. Civ. P. 72(b)(2);

28 U.S.C. § 636(b)(1)(C)). "When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review." *Id.* at *6 (citing Fed. R. Civ. P. 72(b)(2), (3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters*, 95-CV-1641, 1997 U.S. Dist. LEXIS 14718, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999)). "Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review." *Id.* at *6-*7 (footnote omitted).

Notably, "an objection to a report recommendation is not the proper vehicle to raise new arguments or present new evidence in an attempt to take the proverbial second bite at the apple." *Fox v. Lee*, No. 9:15-CV-0390 (TJM/CFH) (McAvoy, S.J.), 2019 U.S. Dist. LEXIS 48967, *8 (N.D.N.Y. Mar. 25, 2019). In fact, as one court within the Second Circuit described it, "new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all." *Razzoli v. Fed. Bureau of Prisons*, 12 Civ. 3774 (LAP)(KNF), 2014 U.S. Dist. LEXIS 74148, *13 (S.D.N.Y. May 30, 2014) (citing *Forman v. Artuz*, 211 F. Supp. 2d 415, 418 n.8 (S.D.N.Y. 2000)). "[W]hen *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review." *Crystal IS, Inc.*, 2023 U.S. Dist. LEXIS 55975, at *7 (citing Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition). "When performing such a 'clear error' review, 'the court need only satisfy itself that there is no clear error on the face of the record in order to accept the

recommendation.'" *Id.* (quoting [Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition]) (footnote omitted). "After conducting the appropriate review, the Court may 'accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.'" *Id.* (quoting 28 U.S.C. § 636(b)(1)(C)).

### B. Plaintiff's response to recommended order to show cause

In February 2021, Plaintiff notified the Court that he was once part of a class action lawsuit against Defendant, filed May 11, 2011, in the Southern District of New York. *See* Dkt. No. 5; *see also Betances v. Fischer*, No. 1:11-cv-03200-RWL (S.D.N.Y.). Plaintiff asserted that he chose to opt out of the class action on December 20, 2020. *See* Dkt. No. 5. Nonetheless, in his response to Defendant's argument in his motion for summary judgment that he is entitled to qualified immunity, Plaintiff stated that Defendant "had a full and fair opportunity to litigate each of these issues in *Earl*[*e*]*y* and *Betances*[](the latter of which included the instant Plaintiff as a party), and the Second Circuit's holdings in those matters are thus controling [sic] here." *See* Dkt. No. 34 at 13-14 (emphases added). Based on these seemingly conflicting statements, Magistrate Judge Lovric recommended the following in his Report and Recommendation:

> As noted above, Plaintiff stated in his opposition memorandum of law that he is currently a party in the class action in *Betances*. (Dkt. No. 34 at 13-14.). This is in contrast with Plaintiff's "answer to the court about timeliness" where he stated that he opted out from the class action on December 20, 2020. (Dkt. No. 5.) Judge Sharpe concluded that equitable tolling applied to Plaintiff's claims based on the understanding that Plaintiff was no longer a class member in *Betances*. I recommend that Plaintiff be directed to show cause, in writing why the Court should not dismiss this case as duplicative if Plaintiff is still a class member in *Betances*.

*See* Dkt. No. 38 at 25 n.15.

Plaintiff provided a sworn statement in response to Magistrate Judge Lovric's recommendation, in which he attested the following:

> I Lamont Adams, Plaintiff, [am] asking the Court not to dismiss this case as duplicative and to forgive me for my error I misquoted in typing in my opposition when I was addressing Defendant Terrence X. Tracy about his entitlement to qualified immunity as to my PRS-Related claim and I was only using Betances to show the Court that Second Circuit and this Court conclusively determined that the three defendant[]s were liable and I was trying to say this appl[ies] to my case and many times the defendants tried to raise[] argument[s] that they are entitled to qualified immunity and the issue was settled on already in Defendants seeking qualified immunity which I was a former member in the past. I made the mistake in saying I was also a party . . . . I'm very sorry for the confusion in this matter.

*See* Dkt. No. 41.

Based on this sworn response, the Court finds that Plaintiff has sufficiently shown that he is no longer a class member in the *Betances* action, and it need not dismiss this action as duplicative at this time.

### C. Defendant's objections to the Report and Recommendation

Defendant objects to Magistrate Judge Lovric's Report and Recommendation on three grounds. *See generally* Dkt. No. 42. First, he asserts that Plaintiff cannot establish that Defendant faced no impediments to unilaterally releasing Plaintiff from PRS. *See id.* at 8-17. Second, Defendant maintains that he is entitled to qualified immunity. *See id.* at 17-18. Third, Defendant contends that Plaintiff cannot recover special damages related to his parole conditions against Defendant. *See id.* at 18-19. The Court addresses each objection in turn.

With respect to the first objection, Defendant asserts that, to obtain an award of compensatory damages in Section 1983 actions arising out of PRS claims, plaintiffs must establish that the defendant "faced no impediments to authorizing the plaintiff's unilateral and immediate release."  *See* Dkt. No. 42 at 8 (citing *Vincent v. Annucci*, 63 F.4th 145, 154 (2d Cir. 2023); *Aponte v. Perez*, [75 F.4th 49] (2d Cir. 2023)).  Defendant argues that the evidence establishes that he faced several impediments that prevented Plaintiff's unilateral and immediate release, including that the Division of Parole relied on DOCS's sentencing calculations; Defendant could not release Plaintiff using only his commitment time sheet as they are notoriously inaccurate; he lacked legal authority to countermand the sentencing judge's intent to automatically impose Plaintiff's PRS term; and he was required to follow the Correction Law.  *See id.* at 8-17.  Defendant's first objection does not appear to constitute an objection to specific portions of Magistrate Judge Lovric's Report and -Recommendation; in fact, it does not refer to the Report and Recommendation at all.  *See generally id.*  Upon reviewing Defendant's memoranda in support of its motion, the Court finds Defendant has never referred to the fact that Plaintiff must show he faced no impediments to authorize his release in his prior submissions.  *See* Dkt. No. 31-2 at 18-22; Dkt. No. 37 at 11-12.  The Court concludes that this is a novel argument that Defendant had a full and fair opportunity to raise in its motion papers before Magistrate Judge Lovric but failed to do so.  The Court therefore deems Defendant's first objection as not an objection at all and reviews Magistrate Judge Lovric's findings with respect to Plaintiff's PRS-related claim for clear error.  *See Razzoli*, 2014 U.S. Dist. LEXIS 74148, at *13.

In his Report and Recommendation, Magistrate Judge Lovric found that there was an issue of fact remaining for trial regarding Plaintiff's PRS-related claim.  *See* Dkt. No. 38 at 16.

Specifically, Magistrate Judge Lovric noted that there was an issue as to whether the sentencing judge's failure to announce the length of Plaintiff's PRS term violated due process. *See id.* Magistrate Judge Lovric noted that the Second Circuit "has clearly articulated that '*Earley* gave the state the option of either (1) arranging for defendants subject to null and void PRS terms to be appropriately resentenced or (2) excising their PRS terms.'" *See id.* at 18 (quoting *Vincent v. Annucci*, 63 F.4th 145, 147 (2d Cir. 2023)). Furthermore, he noted that, the Second Circuit "strongly suggested" in dicta that "resentencing was foreclosed as an option upon release from incarceration." *See id.* (citing *Vincent*, 63 F.4th at 153 ("Resentencing 'for the imposition of PRS terms' connotes amending the sentence to add PRS *in the first instance.* Once a defendant serves his original sentence, however, a court cannot reverse the 'error' and retroactively validate DOC's *ultra vires* and unlawful imposition of PRS.")). Thus, in a case such as Plaintiff's in which he was already released from prison, Magistrate Judge Lovric concluded, Defendant's "only 'remaining option, as outlined in *Earley*, was to excise the terms of the null and void administratively imposed PRS.'" *See id.* (quoting *Vincent*, 63 F.4th at 154). Based on Magistrate Judge Lovric's reasoning, there is accordingly a question of fact as to whether Defendant actually faced an impediment in releasing Plaintiff from his PRS term. *See id.* at 18-19. The Court therefore rejects Defendant's first objection and finds that Magistrate Judge Lovric did not commit clear error with respect to this issue.

Defendant argues in his second objection that he is entitled to qualified immunity. *See* Dkt. No. 42 at 17-18. Defendant asserts that he reasonably believed that Plaintiff was serving a lawful term of PRS because, even though his sentencing court did not pronounce a term of PRS at the time of sentencing, Jenna's Law required such a PRS term and "it was widely understood" that the sentence included such a term. *See id.* at 17. Additionally, Defendant asserts that he

had no legal authority under state law to refer parolees with silent commitment letters for resentencing; he did not obtain that authority from the legislature until June 30, 2008. *See id.* (citing Correction L. §§ 601-a, 601-d (2008)) (footnote omitted). Defendant also attempts to distinguish Second Circuit cases in which the court found that the defendants were not entitled to qualified immunity. *See id.* at 18. As with his first objection, Defendant does not point to any specific provisions within the Report and Recommendation where he believed the Court erred. Instead, he simply reargues the same points that he made in his original submissions to Magistrate Judge Lovric. *See* Dkt. No. 31-2 at 22-27; Dkt. No. 37 at 15. Accordingly, the Court reviews Magistrate Judge Lovric's findings on the issue of qualified immunity for clear error.

Magistrate Judge Lovric found that Defendant was not entitled to qualified immunity, noting that this Court is bound by the Second Circuit's decision denying qualified immunity to a party under the same set of facts and circumstances in *Vincent*. *See* Dkt. No. 38 at 19 (citing *Vincent*, 63 F.4th at 150-51). He noted that, as relevant here, "the Second Circuit held in *Betances v. Fischer*, that Defendant was not entitled to qualified immunity because he 'did not make an objectively reasonable effort "to relieve [plaintiffs] of the burdens of those unlawfully imposed [PRS] terms after [he] knew it has been ruled that the imposition violated federal law."'" *See id.* at 20 (quoting *Betances v. Fischer*, 837 F.3d 162, 174 (2d Cir. 2016) (quoting *Vincent v. Yelich*, 718 F.3d 157, 177 (2d Cir. 2013))). Magistrate Judge Lovric pointed to the Second Circuit's language in *Betances* that "Defendant was only required to make an 'objective[ly] reasonable[]' effort to comply with *Earley*." *See id.* (quoting *Betances*, 837 F.3d at 174 (citing *Vincent v. Yelich*, 718 F.3d 157, 177 (2d Cir. 2013))).

Relying on this caselaw, Magistrate Judge Lovric rejected Defendant's assertion that, "'unlike in *Earl[e]y*, the sentencing Judge imposed PRS on Plaintiff at the time of sentencing.'" *See id.* (quoting Dkt. No. 31, Attach. 2 at 24)). As he noted with respect to Plaintiff's PRS-related claim and, as discussed above, the sentencing judge did not mention or otherwise "impose" a term of PRS on Plaintiff. *See id.* Instead, Magistrate Judge Lovric noted, the sentencing judge merely stated that he sentenced Plaintiff to "'three years['] incarceration pursuant to our agreement[.]'" *See id.* (quoting Dkt. No. 31, Attach. 3 at 66). Presumably, Magistrate Judge Lovric stated, this was the period of PRS the sentencing judge noted during Plaintiff's plea hearing, but there were no specific terms used as to PRS at sentencing. *See id.* Magistrate Judge Lovric therefore recommended that this Court deny Defendant's motion for summary judgment based on the doctrine of qualified immunity because the Second Circuit has held that Defendant's actions were not objectively reasonable in response to its holding in *Earley*. *See id.* The Court adopts this recommendation and finds that Magistrate Judge Lovric did not make a clear error in rendering it. Accordingly, the Court rejects Defendant's second objection.

Third, Defendant contends that Plaintiff is not entitled to recover special damages related to his special parole condition that he attend drug treatment because Defendant "was not the proximate cause of Plaintiff being subjected" that special condition. *See id.* at 18-19. Defendant asserts that he did not impose the special condition of parole on Plaintiff; rather, Plaintiff's parole officer imposed the condition. *See id.* at 19. According to Defendant, even if he were responsible for Plaintiff being required to serve a term of PRS in the first instance, "it was not foreseeable that Plaintiff's parole officer would impose an allegedly unwarranted special condition of parole upon Plaintiff." *See id.* Defendant also argues that the Eleventh

Amendment to the United States Constitution prohibits Plaintiff from receiving an equitable award of parole supervision fees. *See id.* (citing *Hardy v. Fischer*, No. 08 Civ. 2460 (SHS), 2010 U.S. Dist. LEXIS 117007 (S.D.N.Y. Nov. 3, 2010) ("denying motion to amend complaint to include an equitable claim for recoupment of parole supervision fees as futile based on Eleventh Amendment bar")).

In Magistrate Judge Lovric's Report and Recommendation, he recommended that this Court dismiss Plaintiff's special condition claim because he failed to allege Defendant's personal involvement. *See* Dkt. No. 38 at 14. Nonetheless, in a footnote following that recommendation, Magistrate Judge Lovric indicated that he "recommend[s] that – to the extent Plaintiff is permitted to seek compensatory damages related to his [PRS-related] claim – he be permitted to seek special damages based on the unique specific conditions he experienced during the term of the administratively imposed PRS." *See id.* at n.13 (citing *Betances v. Fischer*, 11-CV-3200, 2022 WL 765963, at *3 (S.D.N.Y. Mar. 14, 2022)). In later rejecting Defendant's request to limit Plaintiff to merely nominal damages, Magistrate Judge Lovric also noted that "Plaintiff has identified damages he sustained as a result of being on PRS including but not limited to paying supervision fees in the amount of $30.00 per month, and paying $60.00 per month for the drug treatment program." *See id.* at 22 (citing Dkt. No. 6 at 8; *see also* Dkt. No. 34 at 12). Thus, Magistrate Judge Lovric concluded that Plaintiff had raised an issue of fact for trial as to "whether he is entitled to compensatory damages for Defendant's alleged failure to take reasonable steps to address the unconstitutional administrative imposition of PRS after the *Earley* decision in 2006." *See id.* at 22-23.

"Special damage is the pecuniary loss resulting directly from the effect of a defendant's allegedly wrongful conduct." *Charles Atlas, Ltd. v. Time-Life Books, Inc.*, 570 F. Supp. 150,

155 (S.D.N.Y. 1983) (citing Restatement (Second) Torts § 633 (1977); W. Prosser, [Handbook of the Law of Torts] § 128, at 922 [(4th ed. 1971)]) (other citation omitted). "[S]pecial damages 'commonly include physical discomfort, shock, or injury to health, loss of employment, and injury to the plaintiff's reputation or credit and must be specifically pleaded and proven.'" *Betances v. Fischer*, No. 11-CV-3200 (RML), 2022 U.S. Dist. LEXIS 45082, *29 (S.D.N.Y. Mar. 14, 2022) (quotation omitted). However, recovering fees that a plaintiff paid as part of being subject to PRS is not a special damage; and, in fact, is prohibited under the Eleventh Amendment as "retroactive monetary relief" that is paid by the state. *See Hardy v. Fischer*, No. 08 Civ. 2460 (SHS), 2010 U.S. Dist. LEXIS 117007, *11-*12 (S.D.N.Y. Nov. 3, 2010).

Plaintiff alleges in his Amended Complaint that, while on parole, his parole officer threatened him regarding his special condition, he missed work due to meeting with his access counselor and his drug treatment program, he had to pay out of pocket for the program amounting to $60 per month for the drug program and $30 per month for parole, he commuted a long distance to drug treatment at rush hour, paid approximately $45 for parking for each drug treatment appointment, he was losing sleep, it affected his appetite, and ultimately he was fired from his job because he was a "liability" to the company due to these issues. *See* Dkt. No. 6 at 3-18. Additionally, Plaintiff alleges that he attended various court dates for resentencing that were adjourned after he had arrived because the court did not possess the minutes from his prior sentencing. *See id.* at 15-16. Plaintiff generally alleges that this all impacted his physical, emotional, and financial health. *See id.* at 17-18.

Defendant correctly asserts that the Eleventh Amendment precludes Plaintiff from recovering the $90 per month he spent in parole and drug treatment program fees. *See Hardy*, 2010 U.S. Dist. LEXIS 117007, at *11-*12. The Court thus declines to adopt Magistrate Judge

Lovric's recommendation that Plaintiff may recover those damages if a factfinder finds Defendant liable on his PRS-related claim. *See* Dkt. No. 38 at 22. Furthermore, to the extent that Magistrate Judge Lovric intended that Plaintiff may seek special damages based on the drug treatment program he attended while on PRS, the Court declines to adopt such recommendation. As Magistrate Judge Lovric noted, Plaintiff failed to show that Defendant had any personal involvement in imposing the special condition of parole that he attend drug treatment. *See* Dkt. No. 38 at 14-16. As a plaintiff can only recover special damages that the defendant's conduct directly caused, this limits Plaintiff's recovery in this case to damages directly stemming from his PRS-related claim. Such damages may include "loss of liberty" damages for being constrained to PRS when such PRS may not have been imposed at all. *See Betances*, 2022 U.S. Dist. LEXIS 45082, at *28-*35. However, Plaintiff may not recover damages pertaining to the fact that he attended drug treatment as a special condition of parole since he failed to allege that Defendant's actions directly caused him to suffer that special condition. At the very least, this limits Plaintiff from recovering damages based on his allegations that his parole officer threatened him, he missed work and ultimately lost his job due to meeting with his access counselor and attending drug treatment, his incurred costs from the commute and parking to attend drug treatment, and the physical, mental, and financial impact that attending drug treatment imposed on him.

      Finally, the Court has reviewed the remainder of the Report and Recommendation for clear error and has found none.

## IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ADOPTS** Magistrate Judge Lovric's Report and Recommendation, *see* Dkt. No. 38, granting Defendant's motion for summary judgment in part and denying it in part, *see* Dkt. No. 31, **except as stated herein**; and the Court further

**DECLINES** to adopt Magistrate Judge Lovric's findings in his Report and Recommendation to the extent that he recommended that Plaintiff could seek compensatory damages for PRS and drug treatment costs and that he could seek special damages based on his drug treatment program as a special condition of parole, *see* Dkt. No. 38.  Instead, the Court

**ORDERS**, as discussed above, that Plaintiff may only seek damages directly pertaining to his PRS-related claim, including "loss of liberty" damages, which do not violate the Eleventh Amendment.[5]

**IT IS SO ORDERED.**

Dated: March 13, 2024
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge

---

[5] Only Plaintiff's PRS-related claim, in which he alleges that Defendant violated his due process rights by administratively imposing a term of post-release supervision, remains for trial.  If the factfinder finds that Defendant is liable to Plaintiff on this claim, then it will need to consider Plaintiff's damages pertaining to the violation but that do not stem from his special parole condition of attending a drug treatment program.